Good morning, Your Honors. Matt Campbell, Federal Public Defender, District of the Virgin Islands, on behalf of Mr. Clark, and I'd like to reserve three minutes for rebuttal. Cavon Clark's 38-year sentence was unconstitutionally vindictive. At his third sentencing hearing, the District Court, for the first time, after twice sentencing him concurrently on production and transportation offenses, sentenced consecutively 30 years for production and eight years for transportation. The only way that the Court could try to approach its previous sentencing numbers was to utilize that consecutive sentencing procedure. Well, do you have, I mean, that sort of ascribes a motive. I know you don't mean anything nefarious about that, but as though that were the objective. Do we have anything that tells us that? Well, Your Honor, we recognize the obvious. 38 is less than 55. My daughter's a math major. She helped me with that. So there's no presumption of vindictiveness because the sentence dropped, the overall sentence dropped. So what's your best argument? Your Honor, I would push back a bit on that statement. Okay. And if we look at North Carolina v. Pierce, which was sort of the seminal case that started this, and we look at what the Court was getting at, what it was getting at were several things. First of all, clearly found that it would be a due process violation to affirmatively punish somebody and say, you took an appeal, I'm going to increase your sentence. I agree that's not what happened here. But the Court was also concerned about the appearance of vindictive sentencing and the likelihood that one could deter defendants from appealing. So it's not just actual vindictiveness. It's the appearance of vindictiveness. How would it deter a defendant from appealing that he's going to get his sentence reduced from 55 to 38 years? Well, Your Honor, it'll take me a second, but I'll get there. But what we see in North Carolina v. Pierce is it, strictly speaking, it didn't say that vindictiveness requires a longer sentence. It said a more severe sentence. Okay. So can I, forgive me for interrupting, but the first thing, I'm turning the page now mentally on the idea that your argument is that the judge had a motive to try to get to 55 years. And now I'm understanding your argument to be that we should conclude vindictiveness because a defendant would be deterred. Is that a fair understanding of your real thesis here? I think, yes, in part. I mean, certainly if there's evidence of actual vindictiveness, that's one situation. I'm not claiming that that's what happened. What I'm claiming is that there's a reasonable likelihood of the appearance of vindictiveness. Okay. So that's the answer to my question is yes, we should be thinking about what a defendant. And so then that gets you to Judge Berzon's question, which is how would somebody be deterred if the sentence dropped from over 50 years to 38, I think. Well, Your Honor, I think in at least two different ways. By utilizing a more severe sentencing procedure, namely consecutive sentencing. What that says to defendants is the guidelines become a game. This is judicial gamesmanship. And I had talked a little bit about that in regard to the bond decision out of the Sixth Circuit, admittedly the dissent, however. It talked about judicial gamesmanship. And a defendant who is in prison, who has several times been sentenced to lengthy terms, if that defendant thinks, well, the judge can do whatever the judge wants by changing the rules, sentencing consecutively as opposed to concurrently where the judge has never done that and, in fact, makes no additional factual findings that is necessary, could very well be deterred and say, I don't want to leave USP Tucson where I have my life and I don't want to spend months traveling from USP Tucson. That's not a very credible story for somebody who is going to be out of prison 17 years earlier. Well, but that assumes that a defendant knows exactly what the number is going to be when he makes the decision to appeal. Had this been 50 or 40 or 49, I think a defendant could make a very different choice. But you're arguing that it's a shell game and you're using the word game. So I saw you use it. But that would be a much stronger argument if the court, after having been remanded a couple of times on this sentence. Correct. Still got to 55 years. Well, it couldn't get to 55. It could only get to 50. 50. But it didn't. I mean, it's still a really significant drop. And so it's not just a shell game, it seems to me. What's your best argument that it is? Because now I'm understanding that that's really what your argument is, that it's a quote-unquote game that's malleable and that would deter a defendant from appealing. So what's your best shot? Well, Your Honor, I think the reason that it becomes a game is it's I think it's uncontradicted. There was no change in facts or change in circumstances from the time of the first sentencing to the time of the third sentencing. This isn't a situation like we've seen in some other cases where somebody picked up a conviction in between or the like. The only difference was that Judge Succo could no longer sentence using the recidivist provisions. So it's a game because the judge had never sentenced consecutively before. Clearly, if the judge thought that transportation and production were separate conduct, the judge could have sentenced consecutively by sentencing to, say, 35 and 20. What he said he was doing and what the cases say he should have been doing are the same thing, which is to look at the whole package and come up with what he thought is a fair sentence in total for the crimes for which he's being sentenced. And that's exactly what he did. That's what he said he was doing, and that is what he did. So it seems to me that the game kind of runs the other way, that the task is to come up with an overall fair sentence. And how one does that, given the guidelines and the maximus for the various crimes and so on, is not the inquiry. That one makes either an original sentencing or on a remanded sentence. Well, certainly, I think we're all familiar with the, whether it's packaging or bundling doctrines, and I agree that, generally speaking, that those are applicable. However, in this case, generally speaking, the notion as to whether charges should run consecutive or concurrent typically would involve some sort of decision that there's a separate harm from the charges. Otherwise, again, it becomes a simple matter of gamesmanship to take some math and manipulate it whatever way one chooses. Here, there was no difference in circumstances. The transport was largely irrelevant. The harm here was caused by the production. That's what the judge implicitly found the first time through and the second time through. So the third time through to try to then say the transport now becomes a separate harm that must be addressed is a change in factual findings that there's no change in circumstance. Let me ask you this because you're a specialist and I'm a generalist. On remand, is it, you know, my understanding, my assumption as a former trial court judge on the state side is that it's a do-over. The judge takes a step back, takes another run at it, looks at the whole record. And I think your implied position here is at least if I had been a federal district court judge, which I never was, I think your argument is that I would be obligated to sort of pick up where I left off. In other words, only sentence taking into account the piece of the remand that reversed me. Is that wrong? Well, Your Honor, I think— Or is that what you're arguing? Well, there is certainly the rule of mandate, which essentially says that a district court is to decide the matters that the case has been remanded on. You're not making that argument here. No, I don't believe I am making a rule of mandate argument. But I think that, again, the Bond case out of the Sixth Circuit, I think, is at least instructive in regard to that because the majority, which I disagree with candidly, essentially ruled on the case as if it was a rule of mandate case. The dissent treated it as a vindictive sentencing case. So I think the best answer I can give, and then I'm going to stop, is that vindictiveness is sort of a carve-out, I think, from what you want to call the rule of mandate or the general concept of an open sentence. That, yes, you can sentence open, but you can't be vindictive when you go to sentence open. Right, but—and don't worry, we'll give you a little more time because we've taken a bunch of it. But could you just answer my question? Because I think Judge Forrest had one, and I'm taking up too much of your time. But isn't—am I correct that on remand the judge was supposed to do start over? Or are you really pushing back and saying that it wasn't correct for him to take a step back and take another run at it looking at the whole record? I agree that the judge can look essentially at the whole record. Okay. However, I think that Pierce and the cases that follow it place certain limitations on the ability to do that. All right. Were you trying to add—oh, maybe we reached it. Judge Brisson, did you have another question? No, I don't. Okay. Thank you so much. Thank you. When you come back, we'll put another minute on the clock. Much appreciated. Good morning, Your Honors. I am Ann Wick. I represent the United States. This court should affirm the 38-year sentence imposed by the district court in this case because, one, it was sufficient but not greater than necessary under the totality of the circumstances and within the court's discretion, and, two, because there is no vindictiveness present, nor does it send a message of appearance of vindictiveness as has been more highlighted today. First of all, and the court's really hit on it, is the court was to start over.  Certainly, a party in the defendant's position can point to changes in the way the court articulated its record, but the court was to start over, and it did. And, in fact, he highlighted the real central question to this whole case and what solves the issue before the court is what should be the proper and just penalty under all of the circumstances that are present here. That's the guiding question that the district court was following in imposing the sentence that was well below the advisory guideline sentence of 600 months. And then it also followed the dictates of the guidelines, Section 5G1.2d, where if the proper and just penalty that the district court sees as appropriate cannot be accomplished with the count of highest penalty, then the court is to look at the remaining counts, one or more, and utilize consecutive sentencing to get to that proper and just penalty. And that's exactly what Judge Succo did in this case. And that really proves the absence of vindictiveness, quite frankly, besides the fact that there is no presumption of vindictiveness because, as has been conceded, the penalty, the sentence imposed, is not more severe. It's substantially less than what was previously imposed. And, as the court accurately pointed out, it wasn't even the 50 years that the district court could have sought to impose and impose somehow approaching the 55-year mark of before. The court still went below that. Is the opposing counsel right that it was 55 and then he could have— the district court could have imposed 50? Yes. And they imposed 38? Correct. The maximums were 30 and 20. Were there any statements in the prior sentencing hearings from the district court suggesting that on the merits of it, the—sorry, I want to make sure I get this right— a sentence that would extend the time that he was in prison? I'm sort of—I'm stumbling over my question. What I'm trying to get at is, is there something that the district court said previous in this case to suggest that that second charge just didn't warrant extra punishment, which is why he ran them concurrent before? It's an excellent question, and I believe I understand the question. My read of the record before my involvement of it is that the transportation was always wrapped up into the whole thing. So it was considered, and it was considered in support of that 55-year number. So there was no need to articulate or consider, do I then need to stack onto it as a consecutive sentence, because it was covered by the overall just and right—proper and just penalty of 55 years. So I can't speak to a— The transportation in question—there was some confusion about this— was the transportation to Romano of the images, right? Not that he—not that Clark went from Oregon to Washington before he sent the images. That's my understanding, Your Honor, that the transportation included that to Romano. Right. And the one thing was that when I was looking at the 2021 hearing transcript, I didn't actually see any discussion of the transportation particularly. I mean, obviously he sentenced them separately, but he didn't really explain why—he explained that he sentenced them separately because he wanted to come to an overall fair sentence. But the judge didn't really emphasize the transportation as a separate wrong particularly. Respectfully, I would disagree. There is a comment in the transcript about addressing the separate harm of the transportation, and he made a comment somewhere along the lines of that if the transportation hadn't occurred, much of the harm contemplated by the law wouldn't have also occurred. Which sentencing hearing are you referring to? The most recent one. I believe the same—the 2021 one that Your Honor's referenced. And when you answered Judge Forrest's question a minute ago about— were you referring to the earlier sentencing, the middle one? Yes. I was referring that the previous sentencings incorporated the transportation facts as part of the overall 55-year sentence. Right, but nothing in that hearing indicating that the judge had decided there was a reason, or at least articulated a reason to not separately sentence— separately impose additional time for the transportation charge. Not that I can point to, Your Honor. Quite frankly, I'm about halfway into my time, and really I'd rather address any questions from the court as necessary. Otherwise, I'll just sum up. I don't think we have any other questions. I don't see any, so you're free to sum up. All right. Thank you, Your Honor. Just on the vindictiveness to start there in the summary, where the sentence isn't more severe, we're left with this argument that the appearance is somehow sending a message. I don't think counsel has made that point because defendants aren't out there looking at, well, was this consecutive? Was this concurrent? So the deterrent effect in terms of the right to appeal, it's the number. And what the message sent to other defendants in this situation is, Mr. Clark successfully appealed his sentence twice and then had a resulting sentence reduced by quite a bit. And so I just don't think he can even get to an appearance of vindictiveness on this record. And then lastly, as addressed, the standard is abuse of discretion for the district court. And another way of saying it is, could any other court on this very same record without the previous two sentencing hearings impose a sentence of 38 years on the conduct that's before the court? And if they could have and it was reasonable and it was sufficient but not greater than necessary under those circumstances, then that is the primary reason that this court should affirm. Thank you for your argument. Thank you, Your Honors. You've come a long way for this one. Geographically speaking, we'll put another minute on the clock. Go right ahead. Thank you. You were involved in this case all the way through, right? I started representing Kavon in 2011. Okay, so can I ask a question right out of the gate? Sure. Do you have a case that says that separate from the number of years of imprisonment, that switching from concurrent to consecutive makes something more severe? No. I did want to address three points very quickly. I believe Judge Berzon had asked about the transportation and sort of factually what it reflected. It reflected simply that the images were produced in Washington and were sent from Oregon. No, that doesn't seem to be right. I know you've been saying that all along, but I have understood it to be that he sent it from wherever he sent it from to Romano and wherever Romano was. That's the transportation. That would have been distribution. Why? Because distribution is generally the statute that's used to punish people for sending through e-mail or peer-to-peer or the like. Transport typically involves bringing it across. That's not typically how I've seen it charged, Your Honor. But if we have seen it charged that way? I would defer. I'm not disputing the fact that the images were sent from Oregon to Pennsylvania, so however one wants to look at it. My point was just there was no transportation as in driving to Pennsylvania. There was a comment about Judge Succo saying if transportation hadn't occurred, much of the harm wouldn't have occurred. I don't think that's belied by the facts because the images could clearly have been sent from Washington. There was a question or a comment made by the government that it's always the number. I would ask the Court to look at the citations to the Rapal case as well as the Williams case in which the sentences were actually lower and yet were found vindictive because of practical effect. And I would also argue that the standard of whether or not something is vindictive is, in fact, de novo. I'm well over my time. But I'm happy to answer any questions if anyone has them. I don't think we've got any. But thank you for your arguments. Thank you both. We'll take that case under advisement and go on to the next case on the calendar.
judges: BERZON, CHRISTEN, FORREST